**Billy James BEETS, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14673.**

Court of Criminal Appeals of Oklahoma.

Jan. 22, 1969.

Jay D. Dalton, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Ted Flanagan, Asst. Dist. Atty., for defendant in error.

BUSSEY, Judge.

Billy James Beets, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County for the crime of Second Degree Burglary, After Former Conviction of a Felony; his punishment was fixed at ten years imprisonment in the state penitentiary, and from the judgment and sentence he appeals.

Briefly stated, the facts adduced on the trial reveal that on the early morning of April 16, 1967, Craig Duggan, a newspaper boy, while delivering his route, observed a man in the Go Go Service Station removing cigarettes from the cigarette machine. He immediately notified the attendant in a Consumers Station one block down the street, who, in turn, called the police. A message was dispatched by the police dispatcher and Officer Tom Davidson proceeded to the scene where, after blocking the path of the defendant's automobile, he arrested the defendant, searched his car, where he discovered cigarettes, money and merchandise which had been taken from the Go Go Service Station. An examination of the premises disclosed that entry had been gained by prying open the door and the cigarette machine had been broken into. There was also a crowbar inside the automobile which matched the marks on

the door of the service station. The defendant offered no witnesses in his behalf and on appeal seeks reversal under two assignments of error.

He first contends that the trial court erred in refusing to grant counsel for defense a continuance in order to secure the attendance of necessary defense witnesses. We are of the opinion that this assignment of error is without merit, for it affirmatively appears that counsel for defense had been employed for more than four months prior to trial, and while it may be true that the defendant was only returned to the Tulsa County jail two and one-half days prior to trial, it does not appear that defense counsel was denied the right to consult with his client during this period of time, nor does it appear that counsel for defense was ever denied the right to consult with his client during the four months prior to trial, while the defendant was incarcerated in the Payne County jail under another charge.

In view of the overwhelming evidence of the defendant's guilt, it is inconceivable that a continuance for the purpose of securing defense witnesses could have accomplished anything other than unnecessary delay. We have repeatedly held that the granting or denial of a motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on appeal unless it be shown that the trial court abused its discretion.

This leads us to a consideration of the defendant's second assignment of error which occurred during the second stage of the two-stage trial, after the defendant had been found guilty and when the jury had retired to deliberate the punishment to be imposed. During their deliberation they were returned to the courtroom where the following proceedings occurred:

"THE COURT: Ladies and Gentlemen of the jury, the court is in receipt of a communication from the Foreman as follows: 'If we gave him a sentence of not less than X or more than X years when would he be eligible for parole?'

Signed 'F.E. Lamb.' Now I would in-name?

MR. SHAFFER: Lamb.

"THE COURT: And second: 'If we gave him X number of years when would he be eligible for parole?' Signed 'F.E. Lamb.' Now I would inform the jurors, the jury, that the Pardon and Parole System is under the direction of the Executive Department of the government with the Governor, and the rules and regulations of the Pardon and Parole Board we are not—we have nothing to do with them nor any control over it. They may make whatever rules they deem necessary for the processing of prisoners in the State Penitentiary. *I cannot answer the questions, nor should you consider the problem insofar as assessing the punishment is concerned.* [Emphasis added] There is no —I will say there is no automatic rule that a prisoner would be processed or eligible for parole. To cite instances, many times the Pardon and Parole Board can parole a person before he ever enters the penitentiary if they desire, or they may not grant him consideration until almost his sentence is served. If that answers your question why—it depends upon the rules and regulations of the Pardon and Parole Board which of course is a member of the Department of Corrections which is newly organized, and many times they will schedule or they state that they will schedule a prisoner when one-third of his sentence has been served, not that he is eligible for parole but eligible to be considered for parole. Now as I have stated before these are just offhand comments concerning instances which I have had connection with the Pardon and Parole Board, but I have no control over it. This is the judicial branch of the government, we are separate and distinct from the executive branch which operates and controls the incarceration of prisoners and the release of prisoners prior to their sentence being served. So

take—you may now retire to further deliberate.

(Jury leaves the courtroom and returns to the jury room.)

MR. POPE: Comes now the defendant and objects to the comments of the court in attempting to outline what the procedures are; and further I think that they should have been admonished that is not even a factor for their consideration, that all of their instructions are within the instructions and the only thing they should consider is in the instructions. And I don't think they should even be talking about it, and I believe the court should tell them that.

MR. SHAFFER: I believe that admonition was given by the court, that they aren't to consider when he would be given a parole in assessing the punishment.

THE COURT: Exception allowed."

Counsel for defense argues that the statements made by the court constituted error so prejudicial that the judgment and sentence should be reversed, or at the very least, modified.

While we have repeatedly condemned the practice of instructing or advising the jury relative to credits for good time, blood time, etc., we do not feel in the instant case that the remarks of the judge constituted such comment, but rather that he was attempting to explain to the jury that the granting or giving of a parole was an administerial function of the executive branch of the government.

While it would have been better for the trial court to have simply advised the jury that he had given them all of the instructions and that he could not answer their questions, we do not feel, in the light of the entire record, that the trial judge's remarks were such as to require a reversal or modification.

For all of the reasons above set forth, the judgment and sentence appealed from is affirmed.

BRETT, P. J., and NIX, J., concur.